**NATIONAL LAND FOR PEOPLE, INC., Plaintiff,**

v.

**The BUREAU OF RECLAMATION OF the DEPARTMENT OF the INTERIOR et al., Defendants.**

**Civ. A. No. 76–0928.**

United States District Court, District of Columbia.

Aug. 9, 1976.

George T. Frampton, Jr., Washington, D. C., Mary Louise Frampton, Fresno, Cal., for plaintiff.

Gary J. Fisher, Donald W. Redd, Dept. of Justice, Washington, D. C., for defendants.

Robert L. McCarty, Washington, D. C., Kendall L. Manock, Fresno, Cal., Stanley W. Kronick, Sacramento, Cal., Ted R. Frame, Coalinga, Cal., for intervenors.

## MEMORANDUM OPINION

PARKER, District Judge.

In this proceeding plaintiff seeks a preliminary injunction embracing a wide range of relief. The Court concludes that partial relief is warranted and a preliminary injunction is granted to that extent. The background events and the reasons why such relief is granted are set forth in this Memorandum Opinion.

### The Nature of the Litigation

This proceeding is concerned with our nation's reclamation program and the sale of privately owned land in the Westland Water District (Westlands) of the San Joaquin Valley of California. Such sales are governed by the requirements and provisions of the Reclamation Act of 1902, 43 U.S.C. § 371 et seq., and the Omnibus Adjustment Act of 1926, 43 U.S.C. § 423 et seq.

The reclamation program provides federally subsidized water to private owners of land in Westlands and other arid areas through projects constructed and sponsored by the Federal government. The two statutes mandate that owners of more than 160 acres in Westlands may receive water from a Federal water resources project on such excess land if they sign recordable contracts agreeing to sell such excess land within a stated time to eligible buyers in 160 acre parcels at prices based on the true market value of such lands without reference to the construction of the water project. The Bureau of Reclamation (Bureau) of the Department of Interior is charged with the administration of the reclamation program.

The plaintiff, National Land for People, Inc. (National Land), seeks a preliminary injunction against officials of the Department of Interior prohibiting the approval of such excess land sales under present Bureau rules and regulations; directing them to institute rule making proceedings and to implement rules consistent with the Act; and prohibiting them from approving sales of excess land until completion of rule making procedures.

### The Parties

National Land is a non-profit membership organization composed predominantly of farmworkers and farmers whose purpose is to promote and assist the growth of family farms and to insure enforcement of laws affecting agricultural landholding. The organization is incorporated in the State of California. The named Federal defendants[1] are: Thomas Kleppe, Secretary of

---

1. Originally named as a defendant was the Bureau of Reclamation of the Department of Interior. On Motion of the government, the Bureau was dismissed as a party defendant. *Blackmar*

the Department of Interior, who supervises the operations of the Bureau of Reclamation and is authorized by statute, 43 U.S.C. § 373, to perform such acts and to make such rules and regulations as required to implement the purposes and provisions of the Reclamation Act, and; Gilbert G. Stamm, Commissioner of the Bureau of Reclamation, responsible for administering the reclamation of arid land under the Reclamation Act of 1902 and supplementary acts and under the supervision of the Secretary of the Interior. The intervening defendants are ten individuals who have entered into agreements to purchase excess land from private land owners and three California corporate landlords, owners of excess land.[2]

### The Statutory Framework

The Westlands Water District is a part of the San Luis Unit of the Central Valley Project in California. It was designed, constructed, and financed by the government to supply federally owned water through federally owned irrigation works to farm land in Westlands. The Project is administered by the Bureau in accordance with the Reclamation Acts of 1902 and 1926.

All land within Westlands was in private ownership at the time the Project was authorized by Congress. Under the Act of 1926, for a private landowner to receive Project water, he was first required to sign a recordable contract with the Department of the Interior agreeing to sell any lands owned in excess of 160 acres, under terms and conditions satisfactory to the Secretary of the Interior and at prices not exceeding those fixed by the Secretary. 43 U.S.C. § 423e.

A condition of the recordable contract is that the landowner must obtain approval of proposed excess land sales from the Bureau of Reclamation. Under the reclamation laws and pursuant to its recordable contract with the landowner, the Bureau approves

the sale when assured that: a bona fide sale is involved; the prospective purchaser is eligible to take title to the land as nonexcess; and the price involved in the transaction does not reflect project benefits.

If the landowner fails to sell his excess acreage within time limits provided by the contract, a power of attorney passes to the Secretary of the Interior to sell the property. Otherwise, the Bureau of Reclamation has no authority over whom the private seller sells his land.

### The History of this Litigation

On November 14, 1975, National Land, pursuant to the Administrative Procedure Act, 5 U.S.C. § 553, petitioned the Bureau to formulate rules and regulations establishing criteria and procedures for governmental approval of sales of excess land under the Reclamation Act. Plaintiff requested rule making to insure Bureau enforcement of the statutory requirements that any person owning in excess of 160 acres of land receiving subsidized water from a Federal reclamation project must dispose of such excess land pursuant to a recordable contract: a) in lots of not more than one hundred and sixty (160) acres per buyer, b) to residents of the land or those living in the neighborhood, and c) at prices which reflect the value of the land without the Federally subsidized irrigation. 43 U.S.C. § 431, 43 U.S.C. § 423e.

On February 5, 1976, the Bureau rejected the plaintiff's petition, and reasoned that the law could best be enforced by an analysis of each sale and eligibility question on a case-by-case basis and that certain referred-to excess land sales discussed in the plaintiff's petition did not violate provisions of the Reclamation Act.

Later, on May 25, 1976, National Land filed with this Court a complaint seeking preliminary and permanent injunctive relief. The hearing on the preliminary in-

---

*v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952); *Simons v. Vinson*, 394 F.2d 732, 736 (5th Cir. 1968).

**2.** The intervenors first sought a change of venue to the United States District Court for the Eastern District of California, 28 U.S.C. § 1404. Their motion requesting such relief was denied.

junction was held on July 9, 1976. On basis of the memoranda of points and authorities, affidavits, exhibits, argument of counsel and post hearing memoranda, the Court, pursuant to Rule 52(a), Fed.R.Civ.P., enters the following findings of fact and conclusions of law, granting in part the preliminary injunctive relief sought by plaintiff.

### Findings of Fact

1. The legislative history of the reclamation laws indicates a purpose of the Federal Government to create small tracts of privately held farm land available at nonspeculative prices in areas irrigated by Federal projects. *See,* e. g., H.R.Rep.No.1468, 57th Cong., 1st Sess. 8 (1902).

2. Members of National Land have from time to time expressed an interest in purchasing excess lands. Many small farmers within its membership have been unsuccessful in finding land available in 160 acre tracts at a price which excludes enhanced value resulting from water projects subsidized by the government.

3. Members of National Land have made offers to buy excess land from private owners in Westlands and their offers have been rejected.

4. Members of National Land, as potential purchasers of excess lands, have an interest in presenting their views to the Bureau in public rule making procedures relating to criteria for approval of such land sales. Exhibit A to plaintiff's complaint filed on May 25, 1976, was a petition and a memorandum of points and authorities, both dated November 11, 1975, directed to and filed with the Bureau.

5. The excess land sales requiring Bureau approval involve contracts between private landowners and potential private purchasers, such as members of National Land. It is with regard to the Bureau's criteria for approving these private sales that formal rule making procedures are requested.

6. The amount of excess lands in Westlands, subject to the requirement of the Reclamation Acts, is limited and this case would be rendered moot in the event the Bureau granted final approval to sales encompassing all such lands.

7. An important aspect of the sale of excess lands is the determination of its fair market value by the Bureau without project enhancement. A recent publication of the General Accounting Office concludes that the Bureau's appraisal techniques should be improved and that written guidelines are needed setting forth the criteria and procedures used in evaluating the reasonableness of the sales price of those lands. Appraisal Procedures and Solutions to Problems Involving the 160 Acre Limitation Provision of Reclamation Law, June 3, 1976.

8. The Solicitor of the Department of Interior has compiled and published opinions (*Basic Solicitor's Opinions,* January 1976) regarding transactions and contracts for sales of excess land submitted for approval. These opinions set forth criteria and rules of general and prospective applications regarding such sales, but were not promulgated pursuant to the rule making provisions of the Administrative Procedure Act.

### Conclusions of Law

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and § 1346.

2. Plaintiff has the requisite standing to sue because it has demonstrated that its individual members have been harmed as a result of defendants' failure to formulate rules and regulations in compliance with the Administrative Procedure Act and because it has shown that its members, small family farmers, are asserting an interest protected by the Reclamation Act.

3. Plaintiff has shown injury in fact caused by the administration of the reclamation laws. Plaintiff has shown its interests are within the zone of interests protected by the reclamation laws or the Administrative Procedure Act. *Simon v. Eastern Kentucky Welfare Rights Organization,* — U.S. ——, 96 S.Ct. 1917, 48 L.Ed.2d 450, 44 USLW 4724, June 1, 1976); *Sierra*

*Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

4. Plaintiff has exhausted all administrative remedies and has no remedy at law to protect the rights of its members.

5. Plaintiff is likely to prevail in a trial on the merits and has shown a substantial probability that:

a) Defendants' denial of plaintiff's request for rule making was arbitrary and capricious and not in accordance with the law.

b) Many of the opinions, letters, and memoranda governing excess land sales compiled in the publication "Basic Solicitor's Opinions," contain rules as defined by 5 U.S.C. § 551(4).

c) Such rules have been formulated by defendants without compliance with the Administrative Procedure Act.

d) Such rules do not fall within any of the exceptions to the Administrative Procedure Act listed in 5 U.S.C. § 553.

e) Government agencies must comply with the Administrative Procedure Act when they formulate rules and regulations.

f) The present rules and regulations utilized by defendants in approving excess land sales are invalid because they have not been formulated pursuant to the requirements of the Administrative Procedure Act.

g) Any future rules and regulations formulated by defendants must comply with the Administrative Procedure Act, 5 U.S.C. § 553.

6. Members of National Land have demonstrated that they will be irreparably harmed if a preliminary injunction is not issued directing the defendants to initiate public rule making proceedings as to criteria and procedures for approval of excess land sales.

7. No perceivable injury will result to the defendants or to the intervenors by preliminarily enjoining the defendants from accepting or approving any new contracts for the sale of excess lands in Westlands which are submitted to the Bureau after the date herein.

8. The public interest will be served by the issuance of a preliminary injunction.

Counsel for plaintiff shall file on order consistent with the above Memorandum Opinion by August 11, 1976.